## Case No. 12,269.

### SALT CO. OF ONONDAGA v. WILKINSON.

[8 Blatchf. 30.] [1]

Circuit Court, N. D. New York.    Oct. 11, 1870.

REMOVAL OF CAUSES — INTERNAL REVENUE— LICENSE—PLACE OF MANUFACTURE.

1. Where an action against a collector of internal revenue, to recover back a license fee paid to him under protest, was commenced in a state court, before July, 1866, and was removed to this court by virtue of the 50th section of the act of June 30th, 1864 (13 Stat. 241), and the action was one which, if commenced in a state court after the passage of the act of July 13th, 1866 (14 Stat. 98), would have been removable to this court under the 67th section (page 171) of that act: *Held*, that, notwithstanding the repeal of the 50th section of the act of 1864, by the 68th section of the act of 1866, this court continued to have, by virtue of the proviso to such 68th section, jurisdiction of the action.

2. The meaning of the word "place," in the internal revenue acts, as applied to the place where the business of a manufacturer authorized by a license under those acts to carry on his business at a place designated in such license, may be carried on, as a single place, discussed.

3. The mere fact that a manufacturer of salt uses more than one set of boilers or evaporating pans, or more than one smoke-flue or chimney, does not make him liable to pay more than one license fee, as being a manufacturer at more than one place.

[This was an action by the Salt Company of Onondaga against Alfred Wilkinson, collector of internal revenue, to recover moneys paid to defendant under protest.]

George F. Comstock, for plaintiff.

William Dorsheimer, Dist. Atty., for defendant.

WOODRUFF, Circuit Judge. The defendant is a collector of United States internal revenue, and this action is brought to recover back license fees, penalties and costs paid under protest by the plaintiff, and by other persons who have assigned to the plaintiff.

The action was commenced in the supreme court of the state, and was removed therefrom to this court, by virtue of the 50th section of the act of congress to provide internal revenue, &c., passed June 30th, 1864 (13 Stat. 241), which applied to cases arising under the internal revenue laws, the provisions of the act of March 2d, 1833 (4 Stat. 632), whereby cases arising under the revenue laws, (then relating to duties on imports only), were declared to be cognizable in the circuit

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

courts of the United States, and, when commenced in the state courts, might be removed to the said circuit courts. By this legislation, a large class or classes of cases were authorized to be brought in the United States' court, and to be removed to that court, if begun in the state court.

By the act of July 13th, 1866 (14 Stat. 98), a change on this subject was made. By section 68 of that act (page 172), the 50th section of the act of 1864 was repealed; and, by section 67, a class of cases, to which class this action belongs, were authorized, when commenced in the state court, to be removed to this court. The effect of this repeal, and of the provisions of such 67th section, was, as distinctly decided by the supreme court of the United States in The Assessor v. Osbornes. 9 Wall. [76 U. S.] 567, to withdraw from this court jurisdiction, through process of its own, of cases arising under the internal revenue laws to recover back duties illegally assessed, where the plaintiff and defendant are both citizens of the state in which the suit is brought, and to confine its jurisdiction to cases removed from the state courts by virtue of the said 67th section; and, as many cases were already pending in the courts of the United States, which had been removed from the state courts under the broader authority of the 50th section of the act of 1864, the repeal declared in the 68th section of the act of 1866 was accompanied by a proviso. "that any case which may have been removed from the courts of any state, under said 50th section, to the courts of the United States, shall be remanded to the state court from which it was so removed, * * * unless the justice of the circuit court of the United States in which such suit * * is pending shall be of opinion that said case would be removable from the court of the state to the circuit court under and by virtue of the 67th section of this act."

This case being now brought to trial, the defendant insists that this court has no authority to proceed to judgment; that the repeal of the before-mentioned 50th section (by virtue of which alone it was removed and came within the jurisdiction of this tribunal), has wholly defeated the jurisdiction; and that, although there is provision for remanding certain cases to the state courts, there is none continuing the jurisdiction of this court in any case. I do not understand the counsel for the defendant to deny that if this case had been commenced in the state court after the passage of the act of 1866, it would be removable to this court under the said 67th section. It is quite plain that it would be so removable, for, that section provides, that any suit commenced in a state court against any officer of the United States acting under the internal revenue laws, on account of any act done under color of his office, may be removed in the manner therein described. As it would be so removable, it is certain that the proviso above cited does.

not authorize a remand thereof to the state court. The argument of the defendant would, therefore, result in this state of things, namely, that the suit was originally lawfully and properly removed to this court and withdrawn from the jurisdiction of the state court and is lawfully pending here; that there is no power to remand it to the state court and restore it to that jurisdiction; and yet that there is no jurisdiction here to hear and determine it. Such a result would not be admitted unless the construction of the act clearly required it; and an act which could have that operation, namely, to take away, by defeating, the right of a plaintiff to a trial and judgment, would be liable to serious criticism.

Construing the 67th and 68th sections together with the proviso, if no other language were contained therein than that above cited, I should not hesitate to hold that the repeal, as modified by the proviso, had, by implication, another qualification, namely, that such cases as would be removable under section 67, were not to be affected by the repeal. And, that this was in fact the design of congress, and is the import of the entire proviso, appears from its concluding sentence: "And, in all cases which may have been removed from any court of any state under and by virtue of said fiftieth section of said act of June 30th, 1864, all attachments made, and all bail or other security given upon such suit * * shall be and continue in full force and effect until final judgment and execution, whether such suit shall be prosecuted to final judgment in the circuit court of the United States, or remanded to the state court from which it was removed." The plain import of the whole proviso is, that some suits should be remanded and others should be prosecuted to final judgment in the circuit court, notwithstanding the repeal of the said 50th section. There is, therefore, no want of jurisdiction or of authority to hear and determine this case upon the pleadings and proofs before me.

I shall not enter upon an extended discussion of the merits. The opinion of the commissioner of internal revenue was laid before me on the hearing, in pursuance of which the assessor assessed, and the defendant collected, the license fees from the plaintiff and the various assignors of the plaintiff mentioned in the declaration. I concur in that opinion in respect to the persons who were respectively bound to take out a license and pay the license fee, and am of the opinion there expressed, that each of such persons is a manufacturer, within the meaning of the law prescribing the duty to take a license and pay such fee. With the reasoning of the opinion of the commissioner in respect to the effect of a license, and that it authorizes the manufacturer to exercise or carry on his business at the place registered and designated therein, and that one license does not authorize the carrying on of business at two separate places,

as the term "place" is used in the act, I also concur; and, of consequence, I agree that the word "place" is not used as an equivalent for town, city, county, or state. But, in the application of the reasoning to the peculiar business carried on by the plaintiff and its assignors, I think the construction given to the act is too rigid. The term should be construed in reference to the nature of the business.

A manufacturer of woolen or cotton cloths, for example, receiving wool or raw cotton and producing cloth, has a location for his manufactory. It may consist of one or several buildings. His washing, his picking, his carding, his spinning, his weaving, his dyeing, his fulling, his finishing, or other processes, may each be carried on in separate buildings. These buildings may be within one enclosure or in separate enclosures. Some processes may be conducted by the aid of steam power, and others at a distance, by water power, at a stream. So, there may be, instead of one large building, in which all the processes are carried on on a large scale, several smaller buildings, in each of which the entire process may be applied to different portions of raw material, and a distinct, entire product be produced in each; and yet the whole may be, according to the common and proper understanding of mankind, but one place of business. On the other hand, it is entirely possible for a manufacturer to carry on two separate factories, at two places. The term must be regarded in reference to its common acceptation; and, although the statute, at times, uses "house or premises," as its equivalent, this gives but little aid to the interpretation, except when business is ordinarily carried on in a house or store, for, "premises" is not more restricted in its meaning than the word "place" itself.

Suppose, for further example, a manufacturer of maple sugar, having the privilege of drawing sap from a large tract of land, gathers the sap and brings it to a single kettle for boiling, it would be said that the place of boiling was his place of business. Suppose, then, that his supply of sap was so great that he required two kettles or four—he would not be required to take out a separate license in order to use each additional kettle. Nor would it be required, if such additional kettles were used in different parts of a grove of maples from which the sap was gathered. It may be suggested, that, in such case, the grove or tract of land is the premises, that is, the place, where he carries on the business. Very true; and no less true if that same grove or tract were divided by fences, enclosing several fields owned by different persons, from each of whom the manufacturer had obtained the privilege of drawing sap and manufacturing sugar thereon. It would still be, in substance, and according to the common acceptation of the term, one place of manufacture.

So, the manufacturer of bricks from clay is not required to have a new license if he does

not build his second or third kiln on precisely the same square feet of ground as the first; or if he builds and burns two kilns at a time, even though the clay for each may have been taken from a different pit or excavation.

The division of the salt field appears to be wholly artificial. From the agreed statement of facts, it appears not unlike a division of ground in or near a city into city lots. A trade or business may be carried on upon one or many of such lots; and, in either case. may be a single business, and be carried on at one place. One manufacturer becomes the owner of one salt block; another, of two. So, in a city, one trader hires or buys for his business a store built upon a single lot; another, for whose larger business such a store is of insufficient dimensions, buys or hires two such stores, and opens communications between them for the purposes of his business. Certainly, the question whether a manufacturer requires more than one license does not depend on the number of boilers or evaporating pans he uses; and it is difficult to see how the question can depend upon the number of flues or chimneys which carry away the smoke of his fires.

It is difficult to say that reasoning makes the subject any clearer; and it may be difficult to employ language which will certainly define, in all cases, one manufactory distinguished from two. But, the mere fact that the manufacturer of salt includes in his business more than one set of boilers, or more than one chimney, does not, satisfactorily to my mind, determine that he is a manufacturer at two places, within the proper meaning of the act. He manufactures on a larger scale than his neighbor. His license fee will form a less percentage of his expenses, and, to that extent, give him an advantage over his neighbor. But it is. in that view, a very slight difference; and this difference must exist under any definition of the meaning of "place," for, one manufacturer, with a large factory and with large capital, will produce more than his neighbor in his smaller shop or factory. Congress did all that it deemed necessary in view of this difference, by providing, in its definition of a manufacturer, that, unless one produced goods, &c., of a value exceeding one thousand dollars annually, he should not be deemed a manufacturer within the act, nor be charged with any license fee.

My conviction is, that, upon the agreed statement of facts, which merely shows that some of the parties, in their manufacture of salt, use two sets of boilers and one chimney, and some use two or more sets of boilers and as many chimneys, and that these are called blocks and double blocks, they were not chargeable with more than one license fee.

The plaintiff should, therefore, have judgment for the excess paid according to this view. The amount may be ascertained by a reference, or otherwise. as no doubt the parties will agree before the entry of final judgment.